The next case this morning is 521-0091, People v. Valentine. Arguing for the appellant, Rebecca Valentine, is Kyle Smith. Arguing for the appellee, People of the State of Illinois, is Becky Ray. Each side will have ten minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Okay, good morning. Good morning. Mr. Smith, would you like to proceed on behalf of the appellant? Sure would. Go ahead. May it please the court, counsel. My name is Kyle Smith, and I represent the appellant in this matter, Ms. Rebecca Valentine. Ms. Valentine raises one issue for this court's consideration today, and that is whether the trial court abused its discretion when it denied her motion to withdraw her guilty plea. Ms. Valentine had entered a plea of guilty to the offense of first-degree murder for her partner of four years, Mr. Reginald Glispie. She shortly thereafter moved to withdraw her plea, arguing that she was unaware that she was pleading at the time her plea was entered. At the hearing on this motion, she testified that she wasn't thinking clearly when the plea was entered, due in part to the psychotropic medication that she was under at the time. I would note that prior to this point, she had been previously declared incompetent and had to be restored to competence after four months of treatment, and so she was still dealing with the effects of the medication at that time. She testified that she was overwhelmed, stressed, and rushed, and that she had questions, but she did not ask them with the court. She also revealed, notably, that she had been in an abusive relationship with the victim for four years. She testified that he beat her every day, that he was a heavy drinker, and that he would frequently lock her out of the apartment, and forcing her to sleep on the streets or visit women's shelters or psychiatric hospitals. According to her attorney, she testified that it's one of the reasons why the trial court should allow her to withdraw her plea, that this evidence could build a pattern that could be shown to further explore the defense of what she called battered woman syndrome. She also alleged that the medication made her unaware that she was pleading guilty. So the Constitution, as I'm sure you're aware, requires that all pleas have to be knowing and voluntary, and in this state, the rule is the motion to withdraw a plea should be granted to correct a manifest injustice. There are four grounds for withdrawing a plea, and that is whether there is a misapprehension of the law or fact, whether there is doubt as to guilt of the accused, whether the accused has a defense that is worthy of consideration by the jury, and whether the ends of justice would be served by allowing the case to go to trial. I would also add that the standard to be used at these hearings is not one of actual innocence. It's not a bench trial. You're not trying to prove that you're innocent, but rather you're trying to show that you have met one of these grounds and that there's reason to withdraw the plea. As I state in our brief, we argue that all four grounds were implicated in this situation. There was a misapprehension of both law and fact, in that she not only was not aware that she was pleading guilty, but she didn't know that she had a plausible defense to these charges. And that defense, as I note in the brief, the attorney below called it battered woman syndrome, and that can be shown in a couple different ways. And I highlight a few examples in which that defense has been successful in murder cases in the past. It's most commonly used as self-defense, but it can also be used to show that there was second degree murder rather than first degree as she was charged with. That would be if it was based on the provocation or if her claims of self-defense were found to be unreasonable, that would still entitle her to be charged under a lesser degree. And we allege that the standards was met here. She was able to show that she had been in this abusive relationship and that the facts and circumstances of this case show that it was likely that, as she told one of the psychiatrists, that this started out as an argument and then it soon became violent. And she said that there was blood everywhere. And she has issues remembering some of the events and details about the actual event itself. But she does. I think there are grounds which she should be allowed to have an attorney explore these possible defenses that she could raise at trial. I would like to... Counsel, she was admonished, wasn't she? That she had a right to an attorney and all that. You're not reminding me of that, are you? No, she had been given her... She had been admonished correctly. But I think it is important to keep in mind that... And you're saying she has a defense. Well, I thought you couldn't do that in Illinois. That's not a reason for throwing your plate because, well, let's try this one. Now let's try this other one. I had that one I didn't use. Well, so I think that, as I said in the brief, that she was not aware that she had this plausible defense. So it wasn't as if this is something that she had been discussing with her attorney and had changed her mind about. And if you're addressing the state's argument that a defense worthy of consideration is no longer a grounds to withdraw a plea, I think that's just plainly incorrect. I think the law is well-established that this is one of the grounds. The case law going back to, obviously, 1952 was the Morial decision, which is most commonly cited. But in my brief, in the reply brief, I identified some cases going back to the 20s and 30s, which used this language, and that has been the law of this state. Those are after a plea of guilty? Yes. Oh, wait, I might have had a good defense. Let me try that. It has to be a defense worthy of consideration by a jury. Really? That's what you're saying? Yeah. But yeah, that is one of the grounds that the Supreme Court has decided is one of the grounds for withdrawing a plea. And it's affirmed that on multiple occasions since then. I think the Nieto-Roman decision, which says that this has somehow changed, is one that's been, not only has it been not ruled on by the Supreme Court, it has been rejected by the Third District and I believe this district as well, in decisions that were published after that continue to recognize that having a worthy defense is grounds to withdraw a plea. I would also note that, you know, I don't see how having a worthy defense to the charges is any different than there being doubt as to someone's guilt. Because if she is able to prove these defenses, then she would be, by law, she would be not guilty. So I don't necessarily see the distinction that is being made there. And then referring to the Nieto-Roman decision, yeah, I would say that only the Illinois Supreme Court, if I'm wrong on this, only the Illinois Supreme Court can change its mind. It's never overruled any of its prior decisions. I don't believe that the court has to reaffirm every single grounds in each case, especially when, like, as I pointed out in the reply to you. Was the decision really filed in most cases? I don't recall off the top of my head. I believe it may have been denied in Nieto-Roman, but I don't recall to be certain. But again, that's, I don't think, I think the Nieto-Roman decision was incorrectly decided. I don't think that the appellate court has the authority to overrule the decades of precedent from the Supreme Court, especially since their reasoning was just, oh, well, they haven't cited it in a long time. They haven't used this exact language. And as I pointed out in the cases that they referred to, that wasn't really the issue. The issue had to go more towards the moment of plea itself, like whether it was intelligently and voluntarily entered. So those cases weren't necessarily concerned with the facts and circumstances of the underlying offense itself. And I would also note that the Carlson decision that the state referenced, I would just quickly note that in this case, we are alleging all four grounds for withdrawing the plea. So it's not just the defense worthy of consideration. And the policy concerns in that case aren't present here because in that case, they were concerned that the defendant could just simply claim that they had a defense and then avoid the, if they had a sentence that they weren't happy with. In this case, she knew her sentence going in because it was a negotiated plea and she asked to withdraw. I see that my time has expired. So I would simply, unless there are any further questions, I would ask that you, this court, reverse the trial court's decision and remand this case for leave to withdraw. Thank you. Thank you. Justice Welch, any further questions? No further questions. Justice Vaughn? No questions. Okay. Thank you, Mr. Smith. You'll have a few minutes after Ms. Ray. Ms. Ray for the state. May it please the court, counsel. I'm Becky Ray for the state's attorney's appellate prosecutor. The defendant in this case was not acting under a misapprehension of facts or law when she pled guilty. She's not established that she was acting under any misapprehension as a result of any possible defenses that she may have been uninformed or misinformed about by her plea counsel. The record in this case is not clear that plea counsel failed to act on the defendant's information that she was a battered woman at the hands of the victim. There's no evidence that Burrell didn't act. Plea counsel Christian Burrell didn't act on the information that she gave him. The record only shows that he did not necessarily tell her whether or not he acted upon that. That was the question that that post plea counsel posed to her during the motion to withdraw hearing. Post plea counsel also never asked the defendant during the motion hearing if Burrell talked to her about any possible defenses to the charge. That's why it's not in the record. It's not that necessarily that Burrell did not do it. It's just that post plea counsel didn't ask the defendant if Burrell did it. Post plea counsel also never asked the defendant if she understood her plea counsel's legal device to her at the time of the plea. That's also not in the record. What this record does clearly establish, however, is that the defendant understood what she was doing when she pled guilty. She understood the admonishments and the advisements when the court gave them to her. She indicated so. The court gave her ample opportunity to ask questions, but each time the court asked if she had any questions, she indicated she did not. She twice confirmed that no one had forced her or threatened her to get her to plead guilty. She was found fit to stand trial, which means she was also found fit to plead guilty. That is the standard. The trial court, which was in the best position to judge the credibility of the witnesses, the demeanor, et cetera, observed this defendant during the plea proceedings and had no concerns about her fitness on the plea date and plea counsel. Christian Brill also had no concerns. That is a factor for this court to consider. He had met with her numerous times since she had returned from mental health treatment. She and plea counsel had numerous discussions about her decision to plead guilty and plea counsel inquired of her many times, quote, with an eye toward fitness in quote, and he had no doubt that she had a full understanding of what she was doing by pleading guilty. And the defendant affirmed again, excuse me, confirmed again that it was her decision to plead guilty. The record clearly contradicts her assertions that she didn't know what she was doing that day. She was clearly fit and she understood that she was pleading guilty. And this is also supported by Dr. James's fitness report. The defendant asked her treatment team several times when she was being treated, what would happen if she never became fit? And while she had difficulty answering court related questions, when the fitness team asked her directly in casual conversations, she clearly knew the role of the vendor. She had hired private counsel to represent her. She shared her history of prison incarceration. So this wasn't her first dealing with the court system. She understood guilt, innocence, penalties, and the criminal justice system generally. And she knew what her current charges were. So Dr. James concluded that, you know, she might have been malingering and not really wanting to become fit so that she could avoid the consequences of her plea, which was a lengthy prison sentence, which she got. Additionally, Dr. James's report indicates that the defendant knew the roles of various team members, hospital staff, et cetera, and that she had the capacity to understand who court personnel were as a result of knowing who the nurses, the psychiatrists, et cetera, were. And she was also able to communicate effectively with her peers and the hospital staff. And that communication with them was illustrative of her ability to communicate with most importantly, her counsel about whether or not she wanted to plead guilty. She had the capacity to do that. And all of those factors go into whether or not she understood what she was doing on the day she pled guilty. And she did, there was no misapprehension of that. The transcript supports that. And so does Dr. James's report. Dr. James's report noted that the defendant was unwilling to cooperate directly and was willfully attempting to appear unfit to avoid prosecution. And I think that just carries over into her motion hearing where she said that she was unwilling to cooperate.  And I think that's detrimental to her, her case there. And addressing the defense worthy of consideration based on Burge, which is cited in our answer brief. And Burge also sites Hill, which, excuse me, Hughes, which I didn't cite in my brief. I don't believe, but the, the court, the Supreme court didn't use the language of a defense worthy of consideration when it was outlining what the law is for withdrawing a guilty plea in Burge. And standing alone, a worthy defense is not a basis for allowing a defendant to withdraw a guilty plea. And even if it was the defendant doesn't have one in this case, the defendant concedes that battered women's syndrome is not necessarily a legal defense in itself. And as counsel has pointed out that's most often addressed as a self defense claim. In this case, the defendant admitted she was involved in the stabbing death of the victim. So we're not saying she has to prove actual innocence. She's already conceded that that's not the case by admitting she was involved in the stabbing. But the court does apply to Evans factors, which I've noted in my brief that shows that the force, the defendant in this case used was not reasonable or necessary. And I think I've listed all of those and, and they're not present in this case or they're not, they show that her force against Mr. Gillespie was not reasonable. There was no evidence that the victim had been drinking or was drunk the day he stabbed the day he was stabbed by the defendant. The defendant, however, had consumed alcohol and had used crack cocaine and marijuana. There was no evidence presented showing Mr. Gillespie's mental state. However, we do know the defendant in this case was angry. She admitted that at the motion hearing and Dr. Kluge's report indicated that the defendant argued with Gillespie about him and that that was her quote accusation in quote against him. So clearly she was angry. If she accused him of doing something that undermined their relationship, the defendant presented no evidence at the motion hearing that she feared for her life or even safety at the hands of Gillespie on the day of the stabbing. She presented no testimony that the victim had verbally threatened her with any physical harm on any previous occasions and then carried out those threats. She did not indicate she feared he would do so on the day she stabbed him to death either. She did not say the victim had struck her or laid hands on her in anger at all that day. She also did not tell Dr. Kluge when she was speaking with him that the victim had struck her first or that she feared that he would do so. Given that no evidence exists that this victim was physically abusive or had made any threats to become physically abusive on the day of the incident, it's reasonable to infer that the victim, Mr. Gillespie was not the aggressor here. The defendant on the other hand definitely committed an act of aggression against the victim, even though she presented no evidence that she was in fear for her life or safety. She was the only one armed with a weapon and she had to have brought that with her because Gillespie had previously removed all the knives from his apartment to prevent the defendant from attacking him. And that's per the factual basis that the prosecution presented at the plea agreement, which was not objected to. It's also clear the defendant had been consuming alcoholic beverages and illicit substances and that she was the aggressor. Stabbing Gillespie to death was not necessary to prevent her injury or death. She could have left his apartment, which she did not live at, by the way, and she was banned from the apartment complex. So she shouldn't have been there anyway. Also, she did not make any allegations at the motion hearing that Gillespie restrained her and kept her from leaving the apartment of her own free will to avoid any confrontation once they argued and before it became physical. Your honors, I see that my time is about up. And I would ask that this court affirm the lower court's ruling and denying the defendant's motion to withdraw her guilty plea because she has not met her proven that she has a basis to do so. Thank you. Thank you, Ms. Ray. Mr. Smith, rebuttal. Yes, your honor. I'd like to just briefly address just a few points that were raised. I think I think one thing it's important to keep in mind, like I said at the beginning, this is not a bench trial. We are not trying to determine if she acted in self defense or if she committed this act or if, you know, so I think all those arguments as to how she may have fallen short of the, but the evidence may have fallen short of what was claimed in cases like Evans. I think that's for a jury to determine at trial. And at this stage, we don't know, you know, between that's a decision between her and her counselor as to whether she'll testify at trial as to whether, you know, we simply don't know much of the facts about leading up to it. All we know is, you know, the brief factual basis stated at, at her plea and that she made some comments in the, in the record elsewhere to psychiatrists and whatnot. But she does have to prove alleged plausible defense. Don't we have to know that did she really have a plausible defense or aren't those facts relevant to make that explanation? Yes. And those facts are relevant. And I think, but I think, I guess what I'm saying is that a plausible defense is one that can be she has alleged a plausible defense in that in terms of battered woman syndrome. I wouldn't go so far as to say that that's not a defense to raise. I mean to say that it's, it's relevant to fences such as self-defense or second degree homicide, but it can be used in other ways as well. And that was the defense that was ledged by the trial court or the trial counsel, excuse me. And I don't, I don't think I think, I would compare it as I did in my brief to the some evidence standard that is used to raise a defense at trial in order to get jury instructions for, you know, some affirmative defense such as self-defense. What about Ms. Ray's argument that the, about the fact, evidence presented the factual basis at the factual basis. There was no indication of who was the aggressor, but the factual basis did indicate the use of force was not necessary. And the only person threatened was the victim and there was no objection to that. Is that, I don't recall that that particular line coming from the factual basis, but, but I would just say that it, that so I do recall that she was covered in blood and she was crying and she also called 911 on herself essentially. And I think there's some at least circumstantial evidence to, to suspect that perhaps there, this was an altercation. So we don't know who was the aggressor. But I do think there's circumstantial evidence that would suggest that it was perhaps the victim. Was she injured? Was it her blood or was it the victim's blood she was covered in? I don't, I don't, I don't, I don't think that's reflected on the record. I would assume that, I don't know. I don't want to assume. So I think that's, and that's part of the problem here is that we don't know that because she, she ended up taking a guilty plea. So that, that's information that the council would be have access to and would know more about. And that's, I think why she, she chose to raise this claim. I don't think she would have alleged that, that there was a plausible defense here unless she had evidence to suggest that it was in fact the case. So I do think we do have to defer to her understanding of the facts and her knowledge and communications with, with the defendant. And I, I, I, but I, I, I think there's enough, there's enough facts actually on the record about her abusive relationship. And I think it's important to note that the, the sort of battered woman defense or battered woman syndrome, however you want to term it, it usually applies in a period of ongoing relationship. This was a four year relationship in which she had been beaten in her words every single day. She referred to instances where he had, you know, smashed a glass table and that there was glass glass everywhere and that they were keeping the neighbors up and such like that. I don't think it's that much of a stretch to assume that this was another incident of, of aggression from his behalf. And so I see that my time is just about up. So unless there are any further questions, I would simply say that we were asking this court to find that the trial court abused its discretion and remand this case back so that she, Ms. Valentine may have the right to withdraw her plea and go to trial on the merits. Thank you. Justice Welsh. Any questions? No further questions. Justice Vaughn. No questions. Thank you. Okay. Thank you, Mr. Smith. Thank you, Ms. Ray. This matter will be taken under advisement. We'll issue an order in due course.